**Adam WOJCIK, individually and on behalf of all others similarly situated, Plaintiff-Appellant,**

**v.**

**Leroy LEVITT, Director of the Illinois Department of Mental Health, Defendant-Appellee.**

**No. 74–1661.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 3, 1975.

Decided April 9, 1975.

Thomas P. Grippando, Chester A. Lizak, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Paul J. Bargiel and Robert G. Epsteen, Asst. Attys. Gen., Chicago, Ill., for defendant-appellee.

Before PELL, STEVENS and DOYLE,* Circuit Judges.

PER CURIAM.

In this case we must decide whether the district court properly dismissed plaintiff's cause of action, which sought an injunction against the enforcement by defendant, Director of the Illinois Department of Mental Health, of a portion of the Illinois Mental Health Code, without convening a three-judge court pursuant to 28 U.S.C. § 2281.[1]

Plaintiff's indigent father has, since 1959, been involuntarily hospitalized in a facility of the Illinois Department of Mental Health. In May, 1972, the Department notified plaintiff that, pursuant to § 12–12 of the Illinois Mental Health Code,[2] he owed the Department

* Circuit Judge William E. Doyle, of the Tenth Circuit, sitting by designation.

1. 28 U.S.C. § 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

2. Section 12–12, codified as Ill.Rev.Stat.1973, ch. 91½, § 12–12, provides, in pertinent part:

"Each patient receiving treatment in a mental health program of the Department, and the estate of such patient, is liable for the payment of sums representing charges for treatment of such patient at a rate to be determined by the Department in accordance with this Section. If such patient is unable to pay or if the estate of such patient is insufficient, the responsible relatives are severally liable for the payment of such sums, or for the balance due in case less than the amount prescribed under this Act has been paid. The maximum treatment charges for each patient assessed against responsible relatives collectively may not exceed $50 per month, except that where the patient is placed in a nursing home or other facility outside the Department, the Department may pay the actual cost of treatment, maintenance or residence in such facility and may collect reimbursement for the entire amount paid from the patient, or an amount not to exceed $50 per month from responsible relatives according to their proportionate ability to contribute to such charges. The liability of each responsible relative for payment of treatment charges ceases when payments on the basis of financial ability have been made for a total of 12 years for any patient, and any portion of

$50 per month, effective November, 1971, for treatment afforded his father.

After receiving an administrative hearing, after which the imposition of the $50 charge was reaffirmed, plaintiff commenced this suit as a class action,[3] alleging that § 12–12 was unconstitutional [4] and seeking to enjoin the defendant from bringing suit against plaintiff and other members of the class to collect such charges.[5] Plaintiff noted in his complaint that the case appeared to be an appropriate one for the convening of a three-judge court, and subsequently so moved. Defendant moved to dismiss for, *inter alia*, failure to state a cause of action.

On June 5, 1974, in an unreported Memorandum Opinion and Order, District Judge McGarr denied plaintiff's motion to convene a three-judge court and granted defendant's motion to dismiss. In so ruling, the district judge concluded that plaintiff's attacks on the constitutionality of § 12–12 were "obviously without merit." [6] Because we determine that at least one of plaintiff's constitutional arguments has sufficient substance to meet the standards set forth in Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36, we conclude that the district court erred in denying plaintiff's motion to convene a three-judge court.[7]

In *Goosby*, the Supreme Court repeated the tests to be applied by a single district judge in deciding whether the convening of a three-judge district court is necessary.

such 12-year period during which a responsible relative has been determined by the Department to be financially unable to pay any treatment charges must be included in fixing the total period of liability. No child is liable under this Act for treatment of a parent who wilfully failed to contribute to the support of such child for a period of at least 5 years during his minority. No wife is liable under this Act for the treatment of a husband who wilfully failed to contribute to her support for a period of 5 years immediately preceding his hospitalization. Any child or wife claiming exemption because of such wilful failure to support during any such 5-year period must furnish the Department with clear and convincing evidence substantiating such claim. No parent is liable under this Act for the treatment charges incurred by a child after such child reaches the age of majority."

The term "responsible relative" is defined, for purposes of the Mental Health Code, to mean "the spouse, parent or parents, child or children of patients receiving care and treatment in mental health facilities or programs of the Department." Ill.Rev.Stat.1973, ch. 91½, § 1–19.

3. Plaintiff brought this action on behalf of himself and "all other persons whose parents are hospitalized in a mental institution and who are subject to a special tax imposed by the Illinois Department of Mental Health pursuant to § 12–12 of the Illinois Mental Health Code Chapter 91½ § 12–12 Illinois Revised Statute." First Amended Complaint, para. 1. On April 8, 1974, plaintiff moved for leave to proceed as a class. The record before us does not contain the required Fed.R.Civ.P. 23(c)(1) ruling on this motion by the district court.

4. Plaintiff argues that: (1) he is denied equal protection because, while children of indigent mental health patients are liable for support of their parents, no such liability is imposed on the children of parents receiving benefits from the Department of Public Aid; (2) the statute unreasonably distinguishes between those children who were willfully unsupported by their parents and those children, like the plaintiff, who received no support for other reasons or who were in fact supported by their parents; (3) the statute places a burden on children, like the plaintiff, who do not have other siblings; (4) in making all "responsible relatives" severally liable, the statute permits the Department of Mental Health arbitrarily to decide against whom to enforce the liability; and (5) because the children of an involuntarily hospitalized parent receive no greater benefits from the commitment than the public at large, it is a violation of equal protection to single them out to bear this expense.

5. Additionally, plaintiff sought a declaratory judgment as to § 12–12's unconstitutionality, restitution of all money illegally seized from the members of the class under § 12–12, and attorney's fees.

6. It is undisputed that the other conditions precedent to the convening of a three-judge court under § 2281 were met. That is, "the action sought to enjoin a state official from executing statutes of state-wide application [,] and the complaint at least formally alleged a basis for equitable relief." Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 94, 95 S.Ct. 289, 292, 42 L.Ed.2d 249 (1974) (footnotes omitted).

7. There is no doubt that an appeal from the district court's order properly lies in this court. *See Gonzalez, supra* n. 6 at n. 19, 95 S.Ct. at 295 n. 19.

> Title 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. "Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," Bailey v. Patterson, 369 U.S. [31], at 33, 82 S.Ct. 549 [7 L.Ed.2d 512]; "wholly insubstantial," *ibid.*; "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); and "obviously without merit," Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' " Ex parte Poresky, *supra*, at 32, 54 S.Ct. 3, quoting from Hannis Distilling Co. v. Baltimore, *supra*, 216 U.S. at 288, 30 S.Ct. 326; see also Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95 (1909).

Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36. If a plaintiff raises at least one constitutional issue that is not "essentially fictitious," "wholly insubstantial," "obviously frivolous," or "obviously without merit," a single district judge does not possess the jurisdiction to rule on the merits of any of the plaintiff's constitutional claims.

We believe that the plaintiff has met that burden in this case when he argues that the requirement that children of indigent parents receiving treatment from the Department of Mental Health pay up to $50 per month for support of such parents, while children of indigent parents receiving assistance from the Department of Public Aid need not, denies him equal protection of the laws.[8]

There is no common law requirement, apart from statute, in Illinois that children support their indigent parents. People v. Hill, 163 Ill. 186, 189, 46 N.E. 796, 797 (1896); Robertson v. White, 11 Ill.App.2d 177, 180, 136 N.E.2d 550, 552 (1956); Shaver v. Brierton, 1 Ill.App.2d 192, 195, 117 N.E.2d 298, 299 (1954); Schwerdt v. Schwerdt, 141 Ill.App. 386, 390, aff'd, 235 Ill. 386, 85 N.E. 613 (1908). Illinois did, however, require such support by statute for many years. *See* Rogers v. Rogers, 51 Ill.App. 683, 686 (1893). Until 1967, the Public Assistance Code required children to support their parents who were receiving public assistance. With the enactment of the Public Aid Code in that year, however, children were dropped from the definition of "legally responsible relatives" who could be required to provide such support. *See* Ill.Rev.Stats.1973, ch. 23, §§ 2–11, 10–2. Thus, it is only the children of indigent mental patients who are singled out for liability.

Where no "suspect classification"[9] or "fundamental right" is involved, the test for determining whether a legislative classification scheme is consonant with the Fourteenth Amend-

8. The programs administered by the Department of Public Aid include Aid to the Aged, Blind or Disabled, Aid to Families with Dependent Children, Medical Assistance, General Assistance, and Local Aid to the Medically Indigent.

9. Since we conclude that plaintiff has demonstrated the existence of a not-insubstantial constitutional issue under the less strict "rational relationship" test, we need not decide plaintiff's novel argument that in focusing on children of indigent mental patients, Illinois creates an inherently suspect classification.

ment's equal protection guarantee is whether the line drawn by the legislature bears "some rational relationship to a legitimate state purpose." Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d. 768; McDonald v. Board of Election Commissioners, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739; McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393; Estelle v. Dorrough, —— U.S. ——, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975). While we do not wish to suggest that a rational explantion for the aforementioned differing treatment does not exist, no such explanation is clear upon the face of the statutes involved. Counsel for defendant has not yet provided one. As the Memorandum Opinion of the district court did not address this particular contention of the plaintiff, it contains no explanation for the disparate treatment either.[10] Given the fact that this disparity has existed only since 1967, this does not appear to be a case where reform is occurring "one step at a time" or where the legislature has "select[ed] one phase of one field [to] apply a remedy there, neglecting the others," as discussed in Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563.

Nor is this a case where prior decisions of the Supreme Court "foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." There does not appear to be any directly analogous Supreme Court precedent. And, although we recognize that state statutes of the kind here challenged are common[11] and have been held valid in the face of numerous constitutional challenges,[12] none of the decisions surveyed involved a constitutional attack similar to that raised by the plaintiff in this case.[13]

Of course, nothing we say here is intended in any way to intimate a view on the merits of this controversy. We simply hold that, as plaintiff has raised a constitutional challenge to § 12–12 of the Illinois Mental Health Code that cannot be termed "wholly insubstantial" or "obviously frivolous," the district court erred in not convening a three-judge court pursuant to 28 U.S.C. § 2281.[14]

Accordingly, the order of the district court dismissing the complaint is vacated and the order denying plaintiff's motion to convene a three-judge court is reversed. The case is remanded to the district court "with direction to enter an

10. It is clear that the argument was before the district court. *See* plaintiff's Motion to Convene a Three-Judge Court and Memorandum in Support Thereof, at 6–7; plaintiff's Reply Memorandum in Support of Motion to Convene Three-Judge Court and in Opposition to Defendant's Motion to Dismiss, at 3; plaintiff's First Amended Complaint, para. 24(a).

11. *See* Comment, Compulsory Contribution to Support of State Mental Patients Held Deprivation of Equal Protection, 39 N.Y.U.L.Rev. 858 & n. 2 (1964).

12. *See* Beach v. Government of District of Columbia, 116 U.S.App.D.C. 68, 320 F.2d 790 (1963), cert. denied, 375 U.S. 943, 84 S.Ct. 351, 11 L.Ed.2d 274; Department of Mental Health v. Coty, 38 Ill.2d 602, 232 N.E.2d 686 (1967); Department of Mental Health v. Warmbir, 37 Ill.2d 267, 226 N.E.2d 4 (1967); Department of Public Welfare v. Haas, 15 Ill.2d 204, 154 N.E.2d 265 (1958); Kough v. Hoehler, 413 Ill. 409, 109 N.E.2d 177 (1952). *Contra*, Department of Mental Hygiene v. Kirchner, 60 Cal.2d 716, 36 Cal.Rptr. 488, 388 P.2d 720 (1964). *See generally* Annot., 20 A.L.R.3d 363 (1968).

13. As discussed above, our conclusion that plaintiff has raised at least one substantial constitutional issue precludes the need for us to evaluate the substantiality of the others. They are to be evaluated on their merits, along with the equal protection issue discussed in the text, by the three-judge court.

14. In an analogous case, a three-judge court upheld against an equal protection challenge the portion of the Illinois Department of Children and Family Services Act that authorized foster care payments only to foster parents who were unrelated to their foster children. Youakim v. Miller, 374 F.Supp. 1204 (N.D.Ill. 1974). Implicit in the decision was the determination that the constitutional question was substantial enough to invoke the provisions of § 2281. This determination has been buttressed by the Supreme Court's recent notation of probable jurisdiction over the appeal from the district court's decision, —— U.S. ——, 95 S.Ct. 1389, 43 L.Ed.2d 650 (1975).

appropriate order pursuant to [§ 2281] for the convening of a three-judge court to hear and determine the merits of [appellant's] constitutional claims." Goosby v. Osser, 409 U.S. at 522, 93 S.Ct. at 861.[15]

15. At the appropriate time, plaintiff's motion to proceed as a class should be ruled upon. *See* n. 3, *supra*.