Carolyn **BRADLEY** et al.

v.

The **SCHOOL BOARD OF** the **CITY OF RICHMOND, VIRGINIA,** et al.

Civ. A. No. 3353.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 10, 1971.

See also D.C., 324 F.Supp. 456.

Norman J. Chachkin, New York City, Louis R. Lucas, Memphis, Tenn., M.

Ralph Page, James R. Olphin, Richmond, Va., for plaintiffs.

George B. Little, John H. O'Brion, Jr., James K. Cluverius, Richmond, Va., for defendants Superintendent of Schools and School Board of the City of Richmond.

Andrew P. Miller, Atty. Gen. of Virginia, William G. Broaddus and D. Patrick Lacy, Jr., Asst. Attys. Gen., for defendants State Board of Education and Superintendent of Public Instruction.

Robert D. McIlwaine, III, Petersburg, Va.; J. Mercer White, Jr., County Atty., for Henrico County, L. Paul Byrne, Richmond, Va., for defendants School Board and Board of Supervisors of Henrico County.

J. Segar Gravatt, Blackstone, Va., for defendant School Board of Chesterfield County.

Oliver D. Rudy, Commonwealth's Atty., for Chesterfield County, Frederick T. Gray, Walter E. Rogers, Richmond, Va., for Board of Supervisors of Chesterfield County.

Everette G. Allen, Jr., Richmond, Va., for intervenors Bellevue-Ginter Area Civil Ass'n, Robert Douglas Bain, and Sherwood Park Civic Ass'n.

Frederick T. Gray, Walter E. Rogers, Richmond, Va., for intervenors Noel Austin and others.

John S. Battle, Jr., William H. King, Jr., Richmond, Va., for intervenors Westover Hills Parent-Teachers Ass'n.

## MEMORANDUM

MERHIGE, District Judge.

■ Several of the defendants in this case concerning the desegregation of schools in the metropolitan area of Richmond, Virginia, have moved the Court to request the convening of a three-judge district court for the consideration of certain questions that have allegedly arisen. The Court must treat any such request with great care, because the failure to convene such a court when required creates a jurisdictional defect. The convening of a three-judge court must be determined by the appropriate federal statutes strictly construed. See Mitchell v. Donovan, 398 U.S. 427, 90 S. Ct. 1763, 26 L.Ed.2d 378 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Allen v. State Board of Elections, 393 U.S. 544, 561, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

The relevant statute reads as follows:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title. 28 U.S.C. § 2281.

The single judge's task on the motion is restricted "to determining whether the constitutional question is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962).

The state statutory provision at issue reads, in pertinent part, as follows:

> The public schools in each county, city and town operating as a separate school district shall be free to each person, who is not less than six years of age, having reached their sixth birthday on or before September thirtieth of the school year, and who has not reached twenty years of age, residing in such county, city or town. Va.Code § 22-218 (1969 Repl.Vol.).

The moving parties contend that relief sought by the plaintiffs in an amended complaint indicates that this suit seeks to enjoin them from enforcing or

complying with this statute in the operation of public schools.

The plaintiffs demand in their pleadings that the defendants, members of the school boards and local governing bodies of Richmond and adjoining Chesterfield and Henrico Counties and of the State Board of Education, certain school administrators, and the governmental entities which they comprise, be ordered to take all necessary action to bring about the consolidation of the defendant school systems and the merger of the existing school boards. In the alternative plaintiffs ask that the defendant governmental entities enter into contracts for the joint operation of the educational systems of Richmond, Henrico and Chesterfield.

■ The pleadings do not give rise to a need for the convening of a three-judge court. Indeed, bearing in mind the serious drain imposed upon the federal judicial system by the requirements of a three-judge court, there is a heavy duty placed upon the district court to be reasonably certain that the matter is one appropriate for a three-judge court before making any such certification and request to the Chief Judge of the Circuit. See Allen v. State Board of Elections, *supra*; Ex parte Poresky, 290 U.S. 30, 31, 54 S.Ct. 3, 78 L.Ed. 152; Jones v. Branigin, 433 F.2d 576 (6th Cir. 1970). If either of the court orders sought were in fact entered, the relief would not constitute a direction to violate a state statute. Even if the relief required noncompliance with a state law, such an injunction would not necessarily be "upon the ground of the unconstitutionality of such statute," 28 U.S.C. § 2281.

■ The statute in question makes reference to "each county, city, and town operated as a separate school district." Other portions of the education law indicate that the phrase "operating as a separate school district" refers to and modifies only "town." A "town operating as a separate school district" is an entity which appears in other state legislation as well. See, e. g., Va.Code §§ 22–

3, 22–43, 22–61, 22–81, 22–89 through 22–100, 22–100.2, 22–141, 22–141.1, 22–218 et seq. (1969 Repl.Vol.; Supp.1970). Section 22–218 must thus be read to require that "the public schools in each county, city, and town * * * shall be free to each person * * * residing in such county, city or town." The statute as a whole appears to have the principal purpose of defining those who, if admitted, are to be admitted tuition free. Movants suggest that the statute be read to require a county or city school board to accept for enrollment anyone of school age, regardless of any pupil assignment plan, who in fact resides therein. Any such interpretation would preclude the exercise of the privileges and powers given to the State Board of Education in other sections of the Virginia Code. Section 22–218, enacted in 1919, must be read in conjunction with other education law provisions enacted at either the same time or subsequent thereto.

Virginia law provides in detail for the creation and operation of consolidated school systems which may include the territory of a city and two counties. The defendant State Board of Education has the power to create school divisions comprising more than a single county or city. Va.Code § 22–30 (1969 Repl.Vol.). Further sections govern the administration and operation of such systems, Va.Code § 22–34, 22–100.1 through 100.-12 (1969 Repl.Vol.).

The alternative remedy sought, joint school operation, is also authorized by statute, Va.Code § 22–7 (1969 Repl.Vol.), as is a contractual agreement between a city and an adjoining county, Va.Code § 22–99 (1969 Repl.Vol).

Section 22–218 is traceable at least to a section in the Code of 1919; the consolidation legislation for the most part dates from 1954. Part of the latter legislative scheme is a provision which must be construed to vest school boards of consolidated divisions with all the duties of other boards, *mutatis mutandis*, of necessity, in the wider context:

The members so appointed shall constitute the division school board, and

every such board is declared a body corporate * * * and may, in its corporate capacity, sue and be sued, contract or be contracted with and, in general, is vested with all the powers, and charged with all the duties, obligations and responsibilities imposed upon county and city school boards as such by law. Va.Code § 22–100.5 (1969 Repl.Vol.).

Under another provision,

When the State Board of Education has created a school division, composed of two or more counties or one or more counties with one or more cities, the supervision of schools in any such school division may be vested in a single school board under the conditions and provisions as hereinafter set forth. Va.Code § 22–100.1 (1969 Repl.Vol.).

The consolidation provisions are broadly drawn and do not approach the specificity of the statutes concerning city and county systems alone. The quoted provisions, together with § 22–218, can only sensibly be read to require division school boards to assume the duties of city and county boards with respect to their divisions, one of the duties referred to being to admit, tuition-free, residents of the school division to public schools in that division. A reading that required, under a consolidated system, residents of each political subdivision to be admitted to classes in schools of their city or county would in large part frustrate a principal goal of Virginia's consolidated system—economies of scale, and the Court will not attribute such an intention to the legislators. The 1954 legislation must be taken to have built upon and at the least modified the 1919 laws in this respect.

So-called joint school systems have been permitted since 1919 at least. The law provides that the school boards of counties and cities may

establish joint schools for the use of such counties and cities * * * [S]uch schools shall be managed and controlled by the boards jointly, in accordance with such rules and regula-

tions as are promulgated by the State Board. Va.Code § 22–7 (1969 Repl. Vol.).

Legislation dating from 1942 also provides, as mentioned, for operation of schools under contract between a county and a city whereby

the county and city are constituted as one school system for the establishment, operation, maintenance and management of the public schools within the county and city * * * Va.Code § 22–99 (1969 Repl.Vol.).

These two provisions alone suffice to show that under certain circumstances Virginia law is not offended by, but rather contemplates, the operation of schools of two political subdivisions as a single system. It would rob this legislation of most of its meaning to say that school authorities, although empowered to operate and manage such a unit as a single system, could not make pupil assignments across the city or county lines. In addition there is further legislation that buttresses this conclusion.

Section 22–219 permits contracts between the school boards of two localities providing for the free admission of students of one subdivision into the schools of another, tuition to be paid by the sending school board. This legislation was contemporaneous with § 22–218, and provides for the most rudimentary form of common school operation. It illustrates that even in 1919 the terms of § 22–218 were not considered to require the admission of residents of one subdivision into public schools therein, when contractual arrangements provided otherwise. The contemporaneously created option of joint schools should likewise be construed to cut back on any requirement laid down by § 22–218, and the enactment in 1942 of § 22–99, fixing the manner of school government under certain contract systems, demonstrates the recognition, by the legislature, of the continuing legality of the cross-system assignments permitted by § 22–219. Indeed, the interpretation of § 22–218 now urged upon the Court by the movants obviously was not considered an impediment by one or more of the movants to

the arrangements entered into, according to the record in this case, between the School Board of the City of Richmond and the School Board of Chesterfield County at the time of the annexation by the City of Richmond of a portion of Chesterfield County.

■ When the statutory framework is viewed as a whole, therefore, it is readily apparent that state law would not be violated by the creation by the defendants of a joint school system, by contract or otherwise, involving assignment of pupils between political subdivisions. Section 22–218 simply establishes a requirement applicable to what is an optional method of school operations. In other words, a three-judge court is not requisite nor appropriate because no order is sought "restraining the action of any officer of such State in the enforcement or execution of such statute * * *" 28 U.S.C. § 2281. The plaintiffs merely request that one or another authorized optional framework for school management be adopted.

■ There is another reason why a three-judge court would not be appropriate under the present pleadings. The plaintiffs do not contend that § 22–218 is invalid for conflict with the federal Constitution. The substance of their complaint is an attack upon school segregation; by way of remedy they seek the consolidation or joint operation of the school systems of Richmond, Henrico and Chesterfield.

Assuming arguendo that this Court, in granting the relief requested, required certain of the defendants to fail to comply with a requirement of state law, such an order would not necessarily imply a holding that the statute violated was unconstitutional. A distinction exists between what is sought as a form of relief within the power of a court of equity and what is sought as a matter of primary constitutional right, irrespective of the legality of past conduct by the parties sued.

In cases involving discriminatory standards for voting, courts have not been reluctant to require election officials to fail to impose onerous registration requirements, fixed by state law, on new applicants when it is proved that they have not been imposed on some in the past. No finding that the state laws were invalid was made; their application was enjoined as a matter of remedy. See United States v. Duke, 332 F.2d 759 (5th Cir. 1964).

[T]he court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future. Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965).

This doctrine has been applied in school desegregation matters as well:

Appellees' assertion that the District Court for the District of Arkansas is bound to adhere to Arkansas law, unless the state law violates some provision of the Constitution, is not constitutionally sound where the operation of the state law in question fails to provide the constitutional guarantee of a nonracial unitary school system. The remedial power of the federal courts under the Fourteenth Amendment is not limited by state law. Haney v. County Board of Education of Sevier County, 429 F.2d 364 (8th Cir. 1970). See also, Green v. County School Board of New Kent County, 391 U.S. 430, 438 n. 4, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

In *Haney*, the merger of state school districts, as a form of possible remedy, was approved despite that it might in certain respects require the violation of state statutes whose constitutionality was not questioned. A single district judge decided that case, and appeal was taken to the court of appeals, where no jurisdictional question was raised.

Such orders as were approved in *Haney* are not such as can only be entered by a three-judge court for the reason that no one is thereby ordered to disobey a state law on account of its unconstitutionality. The question of the law's validity never arises; its disregard is di-

rected as a matter of remedy alone, in order to undo the effects of proved unconstitutionally discriminatory acts. A single judge can enter such an order.

For the reasons stated, the motion to request the convening of a three-judge court shall be denied.

See also D.C., 324 F.Supp. 456.