**ERIE CITY RETIREES ASSOCIATION,**
Plaintiff,

v.

**The CITY OF ERIE, the City of Erie Police Officers and Employees Retirement Board, Honorable Barbara Hafer, Defendants.**

Civ. A. No. 93–124E.

United States District Court,
W.D. Pennsylvania.

Dec. 3, 1993.

Lawrence L. Kinter, Erie, PA, for plaintiff.

Gerald J. Villella, City of Erie Solicitor's Office, Erie, PA, for City of Erie.

Paul M. Yatron, Harrisburg, PA, for Honorable Barbara Hafer.

## OPINION

COHILL, District Judge.

Presently before the Court is a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and Request for Rule 11 Sanctions filed on behalf of the Auditor General for the Commonwealth of Pennsylvania, the Honorable Barbara Hafer ("Auditor General"). The Auditor General is one of three defendants in an action initiated by the Erie City Retirees Association (the "Association"). The Association is claiming its member retirees have been deprived of their civil rights by the City of Erie's pension plan and the Auditor General's enforcement of a state statute providing for contributions of state aid to that plan. After consideration of the motion and an examination of the complaint, we will grant the motion to dismiss and deny the request for sanctions.

Furthermore, upon review of the complaint, it is apparent that the allegations in the Association's complaint are insufficient to support its claim and we therefore dismiss without prejudice the complaint against the two remaining defendants, the City of Erie (the "City"), and the City of Erie Officers and Employees Retirement Board (the "Board"), for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

Plaintiff is a non-profit corporation which represents retired municipal employees of Erie, Pennsylvania. Plaintiff's complaint alleges that its retirees' civil rights have been infringed by the contribution and distribution provisions of the General Municipal Pension System State Aid Program, 53 Pa.Stat.Ann. § 895.402 et seq. (1993) ("the Act" or "Act 205") and local ordinances pertaining to a municipal pension plan. The Association is seeking to enjoin the defendants from collecting, allocating and distributing pension and state funds to the retired employees in unequal amounts that are based on the past or present occupations of the employees.

Presently, the City of Erie's municipal employees and retirees participate in one of three different pension plans depending on their past or present position. Separate plans are provided for police officers, firefighters and non-uniformed or "white collar" employees. These plans provide for different levels of contributions and benefits for their members.

Pursuant to Section 402(e) of the Act, state aid is contributed to the funds by the application of a formula that doubles the aid contributed for firefighters and police officers as compared to that contributed for non-uniformed employees. Plaintiff alleges that under the City's pension plans, non-uniformed employees contribute 6.5% of their salaries to their pension plan while police and fire employees contribute 5% of their salaries. Also, upon the death of a non-uniformed retiree, the surviving spouse receives 50% of the decedent's pension, while the spouses of police and fire retirees receive 100% of the decedent's pension.

The Association further alleges the non-uniformed retirees have not received a cost of living increase in their benefits for at least 25 years while, in this same time period, certain police retirees have received and will continue to receive cost of living increases in their benefits. Plaintiff charges that if the state aid to the pension programs was contributed in an equal manner to the three pension plans, there would be sufficient funds to permit the Board to distribute a cost of living increase for the non-uniformed retirees.

Plaintiff alleges the City's pension plans and the state aid program constitute a statutory scheme which subjects the non-uniformed employees and retirees to unequal treatment in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (1988).

## II. DISCUSSION

■ Pursuant to Fed.R.Civ.P. 12(b)(6), this Court must dismiss a claim for relief if it fails to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party, *Sturm v.*

*Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). The court's inquiry is essentially limited to the content of the complaint. *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978). Pleadings must be liberally construed. *Richardson v. Pennsylvania Dept. of Health,* 561 F.2d 489, 492 (3d Cir.1977).

■ It is well settled that "even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), where the inadequacy of the complaint is apparent as a matter of law." *Coggins v. Carpenter,* 468 F.Supp. 270, 279 (E.D.Pa.1979) *citing* 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (1969).

■ The Auditor General argues that her office plays *no role* in determining the proper allocation of state aid program monies among any municipality's pension plans and plaintiff cannot, therefore, demonstrate that it has been deprived of any constitutional or other rights by the actions of the Auditor General.

The Auditor General cites Section 402(g) of the Act in support of her argument. Section 402(g) provides:

> (g) Authorized expenditures of General Municipal Pension System State Aid.— ... If more than one pension plan is maintained by the municipality, then the governing body of the municipality shall annually determine the proportion of the total amount of the General Municipal Pension System State Aid received by the municipality which shall be credited to each pension plan ...

53 Pa.Stat.Ann. § 895.402(g) (1993).

The Auditor General argues that the Act's language clearly provides that her office has no control over the proportion of state aid that is credited to a particular plan by the municipality's governing board.

The Association, however, argues that Section 402(e) of the Act with its allocation formula is the real source of its unequal treatment by the three defendants. Section 402(e) provides in part:

(e)(2) ... The applicable number of units attributable to each eligible recipient city, borough, incorporated town and township shall be as follows:

(i) Police officer—two units.

(ii) Firefighter—two units.

*(iii) Employee other than police officer or firefighter—one unit.*

53 Pa.Stat.Ann. § 895.402(e)(2) (1993) (Emphasis added).

As indicated by the statutory language above, the Auditor General has no more discretion with regard to the allocation formula than she does with the distribution provision in Section 402(g). As such, the only manner in which the Auditor General impacts the Association's retirees is by enforcing Act 205.

There have been no cases challenging the validity of the allocation formula; however, the Pennsylvania Supreme Court has held that municipalities with more than one pension plan are not restricted to distributing state aid based upon the unit allocation formulation in Section 402(e) but have absolute discretion in determining annually how the state aid is to be distributed to its various pension plans. *Pennsylvania State Lodge of Fraternal Order of Police by Bascelli v. Hafer*, 525 Pa. 265, 579 A.2d 1295 (1990).

Plaintiff's complaint alleges jurisdiction over the Section 1983 claim pursuant to the federal question doctrine provided in 28 U.S.C. § 1331 and the grant of jurisdiction over civil rights claims provided in 28 U.S.C. § 1343.

■ Under Section 1343, a federal district court has original jurisdiction over claims that state officials have violated a constitutional right or a federal statute providing for equal rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), *Redd v. Lambert*, 674 F.2d 1032 (5th Cir.1982).

Therefore, for the Association to prevail in its allegations against the Auditor General, it would have to demonstrate that the Act was unconstitutional and that its members' rights had been infringed by the Auditor General's enforcement of the unconstitutional statute.

For the reasons discussed *infra* Plaintiff cannot meet this standard.

■ A federal claim must be a "substantial" one to fall within a Court's federal question jurisdiction. 13B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 3564 (1984). The Supreme Court reviewed the requirement of substantiality in *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) and held:

Over the years the Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit." ... One of the principal decisions on the subject, *Ex parte Poresky*, 290 U.S. 30 [54 S.Ct. 3, 78 L.Ed. 152] (1933), held, first that "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question must be presented"; second, that a three-judge court was not necessary to pass upon this initial question of jurisdiction; and third, that *"[t]he question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'"*

(citations omitted, emphasis added).

A few courts have so held. In *Pagnotti Enterprises, Inc. v. Beltrami*, 787 F.Supp. 440, 448 (M.D.Pa.1992), the District Court stated that dismissal of a suit based upon a federal question claim "is appropriate 'when the allegations of the complaint clearly demonstrate that plaintiff does not have a claim,'" quoting *Lakeside Community Hosp. v. Tahoe Regional Planning Agency*, 461 F.Supp. 1150, 1153 (D.Nev.1978).

However, it must be clear that the plaintiff does not have a claim. In *Kulick v. Pocono Downs Racing Association, Inc.*, 816 F.2d 895 (3d Cir.1987), the district court dismissed *sua sponte* for lack of jurisdiction after a preliminary injunction proceeding, but the United States Court of Appeals for the Third

Circuit reversed, finding that the federal claim was not frivolous.

In *Kulick*, the plaintiff, a horse owner, brought a civil rights action under Section 1983 claiming he had been evicted from a racetrack without due process of law. At a preliminary injunction proceeding, the plaintiff attempted to demonstrate sufficient state action to satisfy Section 1983. 816 F.2d at 897. Denying the injunction, the district court concluded that state officials had not participated in the decision to evict the plaintiff. Thereafter, the court dismissed for lack of jurisdiction relying on its determination at the injunction proceeding that there was no state action. *Id.*

In reversing, the United States Court of Appeals for the Third Circuit reasoned that the factual existence of state action was not a question of jurisdiction and that the plaintiff's claim was plausible and not frivolous. There is no Section 1983 "state action" problem in this case. The Third Circuit Court of Appeals, however, did agree that dismissal was proper where the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." 816 F.2d at 899 (citations omitted).

Therefore, a federal court may dismiss for lack of jurisdiction if the federal claim underlying an action is without merit or has been foreclosed by previous court decisions. Such is the case with the present Plaintiff's claim of unequal treatment in violation of the Fourteenth Amendment.

Any deprivation suffered by Association's retirees has been caused by the state's and the City's classification of the municipal employees and retirees into three different groups: police officers, firefighters and non-uniformed personnel. (Complaint ¶ 7). These groups have been created based on the type of work performed by the different types of municipal employees.

Unless a statute creates a suspect classification or impinges upon a fundamental interest, it will be upheld if the purpose of the classification bears some rational relationship to a legitimate state purpose. *Price v. Cohen,* 715 F.2d 87, 92, 94 (3d Cir.1983), cert. denied, 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 700 (1984); *Jamieson v. Robinson,* 641 F.2d 138, 142 (3d Cir.1981); *Benner v. Oswald,* 592 F.2d 174, 181 (3d Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979).

Also, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it," *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

In the instant case, the classifications created by the pension plan and Act 205 based on an individual's occupation are not suspect. Furthermore, there is no fundamental right to receive the same retirement benefits as those received by individuals employed by the same municipality but in different capacities. Therefore, plaintiff's claim will fail if the purpose of the classification bears some rational relationship to a legitimate governmental purpose.

Under the rational relationship test, it is necessary only that there be a logical rationale whereby the retirement plans under consideration bear a rational relationship to a legitimate state interest. *Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). Courts will only countermand state action if "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [they] can only conclude that the . . . actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); *see also Anderson v. City of Philadelphia,* 845 F.2d 1216, 1222–23 (3d Cir.1988).

In addition, the reasons relied upon by the court need not be those actually relied upon by the actor. As long as the court can construct plausible reasons in support of the state action, the action must, under this standard, be upheld. *Exxon Corp. v. Eagerton,* 462 U.S. 176, 196, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983). At all times, the plaintiff bears the burden of proving illegitimacy. *Madden v. Kentucky,*

309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940).

Municipal employees and retirees have challenged the constitutionality of pension plans previously. In *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976), the United States Supreme Court held

> when local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations.

In a more recent case, the U.S. Court of Appeals for the Eighth Circuit also addressed the question and found

> more uniform treatment of all municipal employees as a group may be legislatively desirable, but it is not mandated by the equal protection clause.

*Hess v. St. Joseph Police Pension Fund,* 605 F.Supp. 1279, 1283 (W.D.Mo.1985), *aff'd in part, rev'd on other grounds,* 788 F.2d 1344 (8th Cir.1986).

Retired police officers challenged discriminatory treatment in *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund,* 937 F.2d 752 (2d Cir.1991). There, the retirees, all former police officers, received different retirement benefits depending on whether they retired after 20 years of service or because of disability. The officers who retired after 20 years, or "for service" received additional benefits from supplemental funds which the disabled retirees did not receive. The United States Court of Appeals for the Second Circuit found the facially discriminatory plan was rationally related to the legitimate governmental interests of attempting to balance the benefits the different groups of retirees received and discouraging experienced police officers from taking early retirement. *Id.* at 756. It therefore held that the retirement plan did not violate the equal protection clause. *Id.*

In the instant case, the necessity of classifying the municipal employees and retirees into different groups by occupation arises from the fact that it may prove difficult to recruit and retain firefighters and police officers given the dangerous nature of these occupations without the inducement of the retirement benefits currently offered.

The rational relationship between the classification and the legitimate interest in providing police and firefighting forces for municipalities is readily apparent. The statute and pension plans in question facilitate this interest by offering an additional incentive to police officers and firefighters in the form of increased retirement benefits. Therefore, the statute cannot be found unconstitutional and will be upheld. As a result, the plaintiff's claim of unequal treatment by the Auditor General and the City and Board necessarily fails.

In light of the foregoing reasons and after viewing all allegations and the reasonable inferences that can be drawn therefrom in the light most favorable to the plaintiff, we hold that the plaintiff will be unable to prove any set of facts in support of its claim which would entitle it to relief. The Auditor General's Motion to Dismiss will be granted, and the complaint will be dismissed *sua sponte* as against the remaining defendants, the City of Erie and the City of Erie Officers and Employees Retirement Board as well.

The Auditor General's Request for Sanctions will be denied. The imposition of sanctions is a discretionary matter for a court and at this time it does not appear that the imposition of Rule 11 sanctions against the plaintiff would be either appropriate or necessary.